IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 17-cv-00620-WJM-STV

---

JULIE ANN MEADE,

Plaintiff,

vs.

AVANT OF COLORADO LLC, AVANT INC.,

Defendants.

---

Proceedings before SCOTTT VARHOLAK, United States Magistrate Judge, United States District Court for the District of Colorado, commencing at 2:03 p.m., October 25, 2017, in the United States Courthouse, Denver, Colorado.

---

WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

---

APPEARANCES

NIKOLAI FRANT and TRINA KISSEL TAYLOR, Attorneys at Law, appearing for the plaintiff.

VALERIE LYNN HLETKO, JASON R. DUNN, JOHN C. REDDING and SCOTT TADASHI SAKIYAMA, Attorneys at Law, appearing for the defendants.

---

MOTION HEARING

P R O C E E D I N G S

(Whereupon, the within electronically recorded proceedings are herein transcribed, pursuant to order of counsel.)

THE COURT: This is 16-cv-620.

Could I have entries of appearance, please.

MR. FRANT: Good afternoon, Nikolai Frant on behalf of the plaintiff, Julie Ann Meade, the Administrator of Colorado Uniform Consumer Credit Code. And with me at counsel table is Trina Taylor.

THE COURT: Good.

MS. HLETKO: Good afternoon, Your Honor. Valerie Hletko, with Buckley Sandler, counsel for Avant. With me at counsel table is John Redding of Buckley Sandler, Jason Dunn from Brownstein Hyatt, and Scott Sakiyama from Buckley Sandler.

THE COURT: Good afternoon.

MS. HLETKO: Good afternoon.

THE COURT: So as I see it -- I have obviously reviewed the briefing by both sides on this. As I see it, we are at essentially three main disputes -- putting aside whose burden it is and what exactly the standard is on burden; but the three disputes are, first, the first question is: Do the state banks receive the same protection as national banks? If they don't, if there's a different

standard to be applied, then this would require a remand back to the state court.

The second question is: Assuming that state banks do receive the same protection as national banks, and, therefore, there's complete preemption as to what applies to state banks, does it apply to subsidiaries or somebody who has had it transferred to them, as in Avant?

Again, that question would need to be answered in the affirmative for this to avoid remand.

And then the third question is: Even if it does -- even if the state banks do receive the same protections and even if that protection would apply on a transfer to Avant, nonetheless, is remand still appropriate? In other words, even if it is preempted, is remand the appropriate result here? Or should the case continue to move forward in federal court?

So that's how I see it. And I think it's easiest, from our perspective to the extent the parties can, to focus their arguments in that order -- to focusing in that order, because I think that those are the three hurdles that Avant has to overcome in order to avoid remand. I think they need to overcome on all three of them to avoid remand. And, logically, I think it makes the most sense to go in that order.

So since this is the state's motion, why don't I

let the state begin with argument in this matter. And, in particular, just to focus -- and I will do this from both sides -- why don't we take it one argument at a time.

For the first question, which is: Do the state banks receive the same protection, the two areas that you can address during the course of your argument is, first: Isn't the purpose of Section 27 to create parity between state and national banks? And if so, doesn't your reading of Section 27 on this first question, at least, destroy that parity?

And second, is the defendant correct that, even if Thomas was correctly decided, this is still preempted, putting aside the true lender argument, but because the rate allowed by federal law referencing Utah rate exceeds the Colorado rate. So if in the course of the other arguments that you can make, if you can address those two issues raised in the briefing.

MR. FRANT: I will, Your Honor. And before I get started, we prepared a hearing notebook with just four statutes in it, in case --

THE COURT: Sure, that will be --

MR. FRANT: -- it would aid the Court. If I could approach.

Thank you.

And I will move to this issue of the distinction

between the FDIA and Section 27 and the National Bank Act. If I could just briefly address kind of the posture that we are at, Your Honor.

THE COURT: Go ahead.

MR. FRANT: And I just wanted to quickly mention the well-pleaded complaint rule, which I'm sure the Court is aware of, but what that says is that, except in very rare circumstances, the presence of a federal law defense, even a defense of preemption, is properly litigated in the state courts when the defense is asserted in response to a state cause of action.

THE COURT: Well, and I think that goes to the third issue that I raised, which is assuming that this is completely preempted -- I'm not saying that I agree that it is or I don't agree that it isn't, but let's assume that state banks get the entirety of the protection the national banks get and that that protection moves down to somebody like Avant, such that this litigation is completely preempted, then I think that gets to the third question, which is: Nonetheless, is remand appropriate because it goes to a defense, as opposed to the exceptions outlined by the Beneficial court? And I think Beneficial relied -- and I'll ask the defendants about this -- largely on the historical protection that the NBA gives to national banks in the special nature of the federally chartered banks in

concluding that the remand was appropriate because the deal was so preempted that it creates one of these limited exceptions, that remand is appropriate.

And one of the questions, I'll ask them, but if you want to address it now is: Whether or not those same historical protections to nationally chartered banks should apply to state-chartered banks and should apply to the FDIA since this requires entire remand, as opposed to letting the states deal with it?

MR. FRANT: All right. That Beneficial National Bank case involved state usury claims against -- asserted directly against the national bank. State banks are fundamentally different; they are state-chartered. They have historically been regulated by the states and it's only in certain narrow context where federal law comes in to preempt the application of state laws as applied to state banks. So they don't have that same history of, you know, extreme federal protection that was recognized by Justice Stevens in the Beneficial National Bank case.

THE COURT: And maybe not as long, but isn't the purpose -- again, and this goes to my initial question, which is: If the purpose of Section 27 is to create parity between state and national banks, (inaudible) in 1831 DA specifically connotes, aren't we destroying that parity between the national and state banks if we create a

distinction between the state banks and the national banks in this case?

MR. FRANT: And we have to compare the text of the two statutes. So that was Congress's general intent and Congress did that. Both national banks and state banks can lend across the country at the interest rate that's permitted in their home state.

And so, in the 1980s, when Congress was extending this right to state banks, it did borrow from the National Bank Act, but it didn't borrow verbatim. What the Eighth Circuit has done is compared the specific tests, you know, the remedy that's created against state banks and the remedy that's created against national banks, because the key inquiry here for complete preemption is, one: What is the federal cause of action that was created? And then, two: Was that federal cause of action intended by Congress to be the exclusive cause of action?

And in Beneficial National Bank, the Supreme Court said, Yes, that was the intent. You can never -- and this is in the words of Justice Stevens -- you can never have -- I will quote him: There is, in short, no such thing as a state law claim of usury against a national bank.

Well, Your Honor, if you turn to Tab 3 of the hearing notebook, we have Section 27 there. And Subsection (b) specifically contains the remedy against eight banks

when they charge usurious interest rates. And if you study this remedy, you will see that it doesn't apply all the time; it doesn't apply to all state bank loans. And that's in contrast to National Bank Act; the National Bank Act's remedy does apply to all national bank loans.

Here, the remedy only kicks in when a state bank is actually relying on its interest rate -- its interest exportation rate, so that would be a New Jersey bank, for example, lending in Colorado and exporting the interest rate laws of New Jersey to Colorado.

But what if that New Jersey bank is lending in its home state of New Jersey? Under those circumstances, it's not exporting its interest rate. And here, when you look at text of the subparagraph (b), you will see that the remedy wouldn't apply to that situation and, therefore, the remedy of New Jersey -- the state of New Jersey' laws would apply.

Well, if there are times when state law applies to interest rates that are charged by a state bank, then we know the federal law is not the exclusive cause of action. It's the cause of action only sometimes. And what the Eighth Circuit recognized is, Well, if the federal law isn't the exclusive cause of action, then there can be no complete preemptions when you are dealing with state bank loans, even if the state usury law is asserted directly against the state bank.

As we acknowledge in the brief, there is a circuit split --

THE COURT: Right.

MR. FRANT: -- but it's only the Eighth Circuit that really has compared the difference in the remedy under the National Bank Act and the State Bank Act. The other circuits that have considered the issue have assumed that there is, you know, verbatim language between the two acts. As the two judges in Hawaii decided just a couple of weeks ago, when you really look at the remedy in the Section 27, you see that it doesn't apply in all circumstances, which is critical for the complete preemption analysis.

THE COURT: But it would, nonetheless, under yours and the Eighth Circuit's reading of this, it would put the state banks on a different footing than the national banks, which seems to conflict with the policy set forth in Section 27(a), which is to create parity between state and national banks.

MR. FRANT: Yes, that Congress didn't adopt the language verbatim. Apparently, it chose to create parity in terms of the lending rate, but not in terms of the remedy.

All we can do as jurists is apply the statutes as they are written and, you know, clearly, Congress chose to create a different remedy with respect to the claims against state banks.

THE COURT: Anything further on the first question, as I posed it to you, that you wish to argue?

Again, this would be whether the state banks receive the same protection as -- again, assuming this was a state bank sitting here as a defendant, as opposed to a nonstate bank, as to the question of complete preemption, anything further? Again, I have obviously read the briefings on this and reviewed the case law cited. But is there anything further on that first question as I framed it?

MR. FRANT: I'm ready to move to the second question.

THE COURT: So on the second question -- so on the second question, there's obviously two circuits that have addressed this question and arguably have reached rulings contrary to yours. And this would be the Krispin opinion and the Madden opinion.

In Krispin, the argument that you make and the argument that Judge Daniel made in Salazar was that Krispin dealt within a wholly owned subsidiary of the bank. And that's certainly a distinction. I'm not sure it's a distinction with a difference with respect to the reasoning of the Krispin opinion. And here, the Krispin opinion said -- and I quote: You need to look to the originating entity in the ongoing assignee in determining whether the Act

applies. And then later said that nonusurious character should not change when the note changes hands.

If we take your position, both of those statements -- your position is contrary to both of those statements in that once the note changes hands from the state banks to, for lack of a simpler term, I know your positions are not technically a servicer, but so that we can at least use simplified terms, when it moves from a -- from a state bank to a servicer and the servicer purchases that loan, it goes from being nonusurious, which seems to contradict the Krispin opinion in that.

MR. FRANT: And, again, focusing specifically on complete preemption, I think judge Daniel is right and we have cited some other cases in our brief, the Madden case, which was the Second Circuit, and some others in the brief, which -- which note that a, really, Krispin is distinct because there is such a unity of interest between, in that case it was May Department Stores and the bank that May owns; there's such a unity of interest there, that really made that case distinct and in a one-off. Whereas here, Avant has no ownership relationship at all with the bank in this case, WebBank. It's a completely separate entity that purchases the loans from the bank.

I would also note, Your Honor, that in the Dodd-Frank Act, which was passed in 2010 in response to the

financial crisis, Congress specifically addressed the factual situation that was at issue in Krispin and held that in those cases, in that circumstance, state law is not specifically not preempted as applied to any affiliate of the national bank.

THE COURT: Well, it could be that Krispin is no longer good law in light of the Dodd-Frank Act. But at least the rationale of Krispin, at least portions of the rationale of Krispin seem to apply to this scenario, which is that Krispin seems to be saying once the loan is made, it maintains its -- if it was nonusury when made, it maintains its nonusury nature after being made. And in, at least that aspect of that opinion, would seem to apply to this situation here. Would you agree with that?

MR. FRANT: And that may -- that's a defense that Avant can certainly assert. But, you know, the issue is where is that defense going to be asserted? And because we haven't alleged any plans directly against the bank, it should probably be asserted in state courts, because we are suing only a nonbank entity.

THE COURT: Well, perhaps, which goes to sort of the third issue, which is: Does this need to be -- even if this is completely preempted, who should decide it? Should it be the federal court or the state court?

But one of the arguments that you are making

obviously, is that this isn't completely preempted. And that because Avant is separate and apart from the state bank, that, therefore, it can be usurious, even if originally it wasn't. And if that's the case, how do you address their arguments that there's this long-standing precedent that valid at inception doesn't loose that validity whenever it's transferred. Precedent -- Supreme Court precedent going back more than a hundred years on that, doesn't your argument on this component, on this second of three arguments, as I have detailed it, doesn't that contradict that long-standing precedent?

MR. FRANT: Right. Well, I will say a couple of things. First of all, with respect to the holding in Krispin, it's wrongly decided. And, again, for completely preemption purposes, the question is whether the federal cause of action is the exclusive cause of action for the claim asserted. In Krispin, it was a national bank that made the loans. And so if you look at the remedy section of the National Bank Act, Section 86, you will see there's no reference whatsoever to claims against nonbank entities.

So that cause of action can't be the exclusive cause of action against those nonbank entities. It doesn't even address remedies against them. So, as an initial point, Krispin is wrongly decided and it's been, you know, repeatedly distinguished or, you know, a number of courts

have refused to follow it.

With respect to the valid-when-made doctrine, we have a very strong argument against that. Valid-when-made actually arose in an entirely separate context and that, you know, the merits of that defense certainly can be litigated. But with respect to the question of which court they should be litigated in, because the exclusive cause of action doesn't have to do with claims against nonbank entities, it is simply not appropriate to litigate the issue here.

THE COURT: Well, except you're raising it with respect to your remand issue, and that you are saying -- as part of your argument, you are arguing that this is not completely preempted.

One of arguments you raised in support of that -- and I think Salazar agrees with you on this -- is it's not completely preempted because they don't get the same protection as a state bank. So, therefore, if it was nonusurious to begin with, it cannot be usurious now and they should get the same protections. That seems to contradict, though -- or your position that they are wrong on that seems to contradict the valid-when-made rule.

So if there are arguments that the valid-when-made rule doesn't apply to this situation, I think it's helpful to hear them.

MR. FRANT: Well, if you look back at the case law

that originated this valid-when-made doctrine, and it arose back in the 1800s back when commercial paper was regularly purchased and sold, and the actual situation was, as follows:

Your Honor, if I make you a loan and then I take your promissory note and I sell it to my opposing counsel here at the usurious discount and then my opposing counsel comes to collect on the note from the Court, if you raised a usury defense saying the usurious transaction as between the two of us prevents you from having an obligation to pay on the note, that's when the valid-when-made doctrine kicked in. And it said, Of course not, this usury between this edge of the triangle doesn't impact your original obligation to me, which was sold to my opposing counsel.

THE COURT: Okay.

MR. FRANT: And so that -- that's not the factual situation that we have here at all.

Because here, there's no allegation that there was usury as between the bank and Avant in that transaction. There was just a pure sale. So consumers aren't saying, Wait a minute, we don't owe on these loans because Avant -- because the bank somehow sold the notes at usurious discounts. That's when valid-when-made would apply.

I was just reading recently a Law Review article from a Georgetown law professor and he was addressing this

issue. And I have got the quote here, if the Court will give me a second.

THE COURT: Do you have citation for the Law Review article?

MR. FRANT: It's an available on the Internet, but I can certainly make it available to the Court.

THE COURT: That would be very -- yeah, if you can provide that sometime in next few days.

MR. FRANT: Valid-when-made is based on a misreading of a Supreme Court case by someone who doesn't understand negotiable instrument law?

THE COURT: If you can -- if you could provide that to my Chambers in the next few days, make sure the defendants get a copy of it, too.

Okay, so I have been over it a few times, but anything further on sort of this second argument, which is, for lack of a better term, I will call it the "Salazar and Krispin argument," which -- which is, even assuming the state banks get the same exact protections that the federal -- that national banks do, does that protection continue when there has been some assignment of the loan to somebody else?

MR. FRANT: Right. And I just heard what I was saying. It's not a Law Review article; it's a web article.

THE COURT: Okay.

MR. FRANT: So I apologize. I don't want to say that it was published in the Law Journal, but ~.~.~.

Well, Your Honor, again, this is an issue that is properly -- you know, because of the well-pleaded complaint rule, is properly litigated in the state courts. But I will note that the Madden case, Madden versus Midland, addressed this issue as well, addressed whether a bank has the right to convey this very valuable right, the right to export interest rates, to a nonbank entity. And Madden looked at the world a lot like Judge Daniel did and said, Well, I don't see where the National Bank Act provides that right can be conveyed. And the Second Circuit held that the right, in fact, cannot be conveyed to nonbank entities.

THE COURT: And we have touched on this question some already, but then the third question is, the point that you began this with, which is: Even if preemption applies, nonetheless, is that something to be decided in state court where this was first brought, versus here?

So if there is anything further -- I know we have touched on it, but if there is anything further you would like to make on that -- on that point or any other point that you want to bring to my attention?

MR. FRANT: Right. It's kind of -- the default rule is the well-pleaded complaint rule. And, you know, in the words of the Tenth Circuit, complete preemption is a

very narrow exception. It represents an extraordinary preemptive power. And it's really only been recognized very rarely, you know, in ERISA cases and National Labor Act case, which clearly aren't applicable today.

So the only other area that the Supreme Court has recognized it is in the area of national banks and their own loans when national banks are sued.

And, you know, with respect to the burden, I don't think there's any dispute that the Avant defendants have the burden of establishing this Court's jurisdiction. I think there was some dispute in the brief -- in the briefing about, you know, how narrowly the removal statute is to be construed --

THE COURT: Right.

MR. FRANT: -- and that sort of thing. But the burden is clearly on the Avant defendants.

I guess, in terms of -- and we have discussed it a little bit, but to the extent there's a legal dispute about whether valid-when-made applies, or whether who the true lender of these loans is, these are all federal preemption defenses, which are interesting and will certainly be litigated; but the case law makes it pretty clear that that type of defense is properly litigated in the state courts. It doesn't mean the defense doesn't get litigated.

I don't know if the Court had other specific

questions --

THE COURT: No.

MR. FRANT: -- on that issue.

THE COURT: No, I don't. Thank you.

MR. FRANT: Thank you.

THE COURT: I will hear from defendants.

I'm going to try to do this in the same way I did with the state, which is go through these in sort of a series of questions, and I will let you know with respect to each question, particular questions that I have that I'm hoping that you can address.

The first is the issue that they have raised here at oral argument with respect to the first question, which is the Eighth Circuit argument in Thomas that the preemption is not complete; that it is only -- that there is the limited exception to the example used here today is New Jersey, issuing of a note in New Jersey. And why isn't that distinction, especially neither Madden nor Community Bank dealt with that issue?

And so -- so that's -- with respect to the first question, that's the one question I have for the defendant on that.

MS. HLETKO: Thank you, Your Honor.

The Eighth Circuit and the Administrator, too, both rely on the clause in Section 27 emphasizing that it

defines the permitted rate if the rate prescribed exceeds the rate the bank otherwise could charge. This "if" clause merely recognizes that Section -- if the Section 27 rate is no higher than what state law authorizes, the protection that the statute grants is unnecessary.

In Beneficial National Bank, the Supreme Court reasoned that the National Bank Act completely preempted state law usury claims because federal law completely defines what constitutes the taking of usury by a national bank, referring to the state law only to determine the maximum permitted rate.

The same is true for Section 27, any claim regarding an exported rate charged by a state-chartered bank must start with the reference to the federal law. Even if the Eighth Circuit's reading were correct, the conclusion that Section 27 does not completely preempt any law usury claim would not follow.

The Court in Thomas said that remedy only applies in limited circumstances; in other words, when it does apply. As the Supreme Court repeatedly has explained, including in Beneficial National Bank, complete preemption means the putative state law claims are actually federal claims if they fall within the scope of an exclusive federal cause of action, whatever that scope may be, which goes to Mr. Frant's New Jersey hypothetical.

Removal of jurisdiction follows original jurisdiction. So the question in determining whether this case arises under federal law is not whether Congress intended Section 27 to provide the exclusive judicial remedy for all state law usury claims against loans made by federally insured state banks, the question is whether Congress intended Section 27 to provide the exclusive judicial remedy for all state law usury claims against loans made by federally insured banks within its scope.

Mr. Frant referred to the LMRA context and the ERISA context. In those the Supreme -- the Supreme Court's decided jurisprudence in those areas provide a good example.

For example, in Avco, the section -- the Court -- Section 301 of the Labor Management Relations Act does not preempt all state law claims between unions and employers, but only claims founded on rights created by the collective bargaining agreements -- or claims that substantially -- that are substantially dependent on an analysis of those collective bargaining agreements.

The same is true for Metropolitan Life, where the Court found complete preemption, even though ERISA does not preempt every state law cause of action relating to ERISA plans, but only those that fall within the scope of Section 502(a).

The perplexing thing about the Administrator's

reliance on Thomas is that this action would be completely preempted, even under the rationale in Thomas, because the rate WebBank is permitted to charge exceeds the rate permitted in the absence of Section 27.

So the Court does not have to infer, as the Supreme Court said in Metropolitan Life, that courts likely will not infer from congressional silence that the cause of action is exclusive, but Beneficial National Bank found that an absence of express intent does not matter where the cause of action is of such force that it is to be deemed exclusive.

And this case is even easier than Beneficial National Bank because Congress not only created a federal cause of action that expressly preempted state law, but it said that its purpose in doing so was to prevent rate discrimination against state banks, leaving no doubt that the cause of action is to be deemed to have such force as to make it exclusive.

THE COURT: So then if that is the case -- moving to the second question, if that's the case, and let's assume that this applies to state -- that there is complete preemption with respect to state banks, obviously, Avant is not a state bank, and so first, why doesn't Dodd-Frank change the analysis of, frankly, any case preceding Dodd-Frank 26BE and 26BH make clear that state usury laws do

not apply to subsidiaries and its affiliates of national banks. Now, you have relied on 25BF which says that this does not affect the interest charged by a national bank, but it doesn't include affiliates or subsidiaries of that national bank. It specifically says that this doesn't apply to the ability to charge usury of a national bank.

A national bank itself is defined in 25BA and it doesn't include subsidiaries and affiliates. So why doesn't the plain language of Dodd-Frank say that you don't get the same -- I know it's a national-bank level, but you are trying to incorporate the same principles over to the state banks. It seems that the plain language of Dodd-Frank says national banks get complete protection; affiliates and subs or anybody else, presumably, does not. So why is that wrong?

MS. HLETKO: Your Honor, putting aside the "if" clause that the Administrator relies on, Section 27 is identical to Sections 85 and 86. And as the Court said in Vaden and in In re: Community Bank of Northern Virginia, the -- when Congress borrows language from one statute and incorporates it into another statute, the language of the two acts ordinarily should be interpreted the same way, Vaden recognized that to do otherwise would undermine Congress's purpose in the Federal Deposit Insurance Act and FDIC has also read the language that way.

THE COURT: So assuming I agree with that, and assuming that I say state banks should get the identical protection as national banks, this still leads to the second question, which is you are not a state bank. And so again, Dodd-Frank seems to me, at least at initial blush, that the plain language of this says, National banks, you get complete protection. You are arguing state banks get the same protection. Say I agree with that, that they get the identical protection as national banks. But then Dodd-Frank seems to say that affiliates and subsidiaries and others don't get that same protection; that that only applies to national banks. And 25BE and 25BH, the plain language of it seems to say that. And what you have relied on, which is 25BF, says that nothing affects the interest charged by a, quote, national bank. But it doesn't say by a national bank, its affiliates, its subsidiaries, others that they lend to. It just says national bank and national bank is, in turn, defined in 25BA.1 to not include subsidiaries and affiliates. It's only defined as the national bank itself.

So why doesn't the plain language of 25BE, 25BH and 25BA.1 mean national bank and you are arguing state banks, too, get complete protection, complete preempted from suit on this, but anybody underneath them does not?

MS. HLETKO: Your Honor, preemption follows the loan and not the lender. And we know this for two reasons.

The first is the formulation of Section 27, which applies to any loan made. And it does not limit that application to any loan made by a federally insured state bank and held by that federally insured state bank.

The second reason we know this, that Section 27 applies to any loan made by a bank without regard to whether it is later assigned, is the principle stated in the Supreme Court's decision situation in Astoria Federal Savings. The Supreme Court said in that case that it is a well-established rule of statutory construction that Congress is presumed to have legislated with an expectation that the established common law will apply, except when a statutory purpose to the contrary is evident is a cardinal rule of law and Supreme Court's decided jurisprudence, going back almost 200 years, that a contract flow from usury in its origin cannot be made usurious by subsequent transactions.

THE COURT: But then how do we get past the language in 25BD that says: Notwithstanding any provision of Title 62, a state consumer financial law shall apply to a subsidiary or affiliate of a national bank other than a subsidiary or affiliate that is chartered by a national bank to the same extent that the state consumer financing law applies to any person, corporation or other entity? It seems that that is the -- well, maybe the presumption is

that, Did they intend to follow the common law? It seems that Dodd-Frank is explicitly saying, We are rejecting common law and we are saying that this potential does not apply to an affiliate or subsidiary. How do I avoid what seems like language of that act?

MS. HLETKO: Because, you know, there is no allegation in this case that Avant made any loan. The allegation that the Administrator makes is that Avant took assignment of loans and somehow is prohibited from charging interest on those loans consistent with the original terms?

THE COURT: But 25BE doesn't distinguish between loans made or loans taken over or loans assigned. It says: A state consumer financing law shall apply to a subsidiary or affiliate of a national bank. There's no -- there's no exception to that. It's just saying this applies to an affiliate or subsidiary. And if it applies to an affiliate or subsidiary, it seems that it has to necessarily apply to somebody who is even less connected to the -- again, let's assume it were a national bank, even less connected to the national bank as Avant is here.

MS. HLETKO: That's correct, Your Honor. And state consumer protection laws do apply to Avant. The state could sue Avant in state court where Avant would not have the -- have parity with the plaintiff to invoke the federal courts on any state consumer potential issue, except usury.

Usury is special and it is the rare, rare case, just like in ERISA and just like in the NLMRA. And we know this under -- because of these rules of statutory construction and the Supreme Court's decision in Beneficial National Bank.

THE COURT: So where does it say that usury laws apply -- do not apply to an affiliate or a subsidiary or other third parties?

MS. HLETKO: Your Honor, Section 1045 of the Dodd-Frank Act, this is 25BH.2, makes clear that the limitation on preemption under portions of the National Bank Act and, you know, and corollary implication is also under the Federal Deposit Insurance Act, that makes clear that the Dodd-Frank Act does not affect the rights of banks to charge interest -- and to the extent that that is true and Congress made that clear, the preemption rights associated with those -- with the rights of national banks and state-chartered federal-insured banks to charge interest consistent with Section 85 and Section 27, then follow the loan and do not attach to lender.

THE COURT: Do you mean 25BH.2 or 25BF? I think what was asserted in the briefing was 25BF, which says that no provision shall construed as altering or otherwise affecting the authority of this Title for the changing of interest by a national bank at the rate allowed by the laws of the state. Is that the provision that you are referring

to?

MS. HLETKO: Correct, Your Honor. Excuse me, it's 25BF.

THE COURT: So this goes back to what this says is that nothing shall be construed as affecting the ability for the charging of interest by a national bank at the rate allowed.

But you are not -- and, again, let's assume that national and state apply equally, you are not a national bank. It's saying that nothing shall be construed as affecting the ability of a national bank to charge whatever interest it want wants. And I think that's clear from 26BF -- or 25BF.

Certainly, that could have been written to say nothing -- no provision shall affect the authority conferred by Section 85 of this Title for the charging of interest by a national bank or subsidiary or affiliate, in which case I would completely agree with your argument; that Dodd-Frank says, Hey, we are not affecting the ability of a national bank or a subsidiary or an affiliate to charge interest. But it doesn't say that; it says national bank.

And then national bank itself is described in Section A.1 as saying, Any bank organized under the laws of the United States -- which you are not -- and any federal branch established in accordance with the International

National Banking act of 1978 -- which you are not either. So how do I avoid what appears to be the plain language, which says, All of consumer potential laws apply to any subsidiary, affiliate or third party?

MS. HLETKO: The reason, Your Honor, is because the language you are referencing would be relevant here if Avant were originating loans and, say, Avant were doing so as an affiliate or a subsidiary of WebBank, that is not the case. There are no allegations that Avant makes loans. And as was clear in Vaden and in the other circuits, the courts must look to the originating entity and not the assignee to determine whether federal law applies.

Judge Posner's opinion in O'vera (ph) in the Seventh Circuit, said in the context of rate preemption for loans assigned that, under the common law of assignments, the assignee steps into the shoes of the assignor, assuming his rights as well as his duties. And a bank's power to sell loans is a necessarily implied corollary of its power to originate loans.

As the Solicitor General said in the Amicus brief filed in connection with the Madden case that the Administrator has referenced, impairing the ability to sell a loan impairs the ability to create it in the first place. The OCC recognized that if preemption did not follow the loan, it would render Section 27's protections hollow. If a

loan could not be sold or must be sold at an indeterminate price, capital markets would evaporate.

And, again, the Administrator has relied on Madden, the Supreme Court denied cert in that case, in part, presumably, due to the OCC's view that the case was so obviously wrongly decided and that these issues relating to valid-when-made and the ability of a bank to assign a loan were not briefed below, there would be a waste of the Supreme Court's review because it was so clearly inconsistent with over 200 --

THE COURT: Well, that seems like an odd position for the Supreme Court to take, to say, We are going to allow an entire circuit to not -- for their banks not to be permitted to make certain loans, which the argument here is it's going to destroy financial markets; for Supreme Court to say, We are not going take this up because they are so clearly wrong, but, nonetheless, we got one out of 11 circuits where it -- or one out of 12 circuits where none of those loans can be made.

MS. HLETKO: Excuse me, Your Honor, if I misstated. That was the OCC's view that it was not necessary for --

THE COURT: Okay.

MS. HLETKO: -- for the Supreme Court to accept cert because it was so obviously wrongly decided.

THE COURT: Okay. Okay.

MS. HLETKO: But in this regard, the historical context is very important.

As discussed in Greenwood Trust, Section 27 was enacted during a credit crunch and a period of sky high interest rates in the late 1970s. Congress recognized that national banks had an advantage over state banks and explicitly said that its purpose was to prevent interest-rate discrimination. Section 27 supported intrastate credit flows then and it continues to do so.

I would like to turn to -- Salazar -- for just a moment --

THE COURT: Sure.

MS. HLETKO: -- which found with respect to service providers that there is no preemption under the national bank at first state law action against the purchaser. And it's important to note that the Court in that case did not address the Tenth Circuit's test for complete preemption and also did not have the benefit of the Supreme Court's decision in Beneficial National Bank.

And as the Tenth Circuit said in Schmelling, the standard, which is also consistent with the Court's rationale in Beneficial National Bank, a claim may be removed to federal court if it meets two conditions. First, the federal law or regulation preempts the state law relied

on for the plaintiff's cause of action. And second, federal law supplies -- substitutes a federal cause of action for the state cause of action manifesting Congress's intent to permit removal.

And Mr. Frant has referred to well-pleaded complaint rule, but it is clear in Beneficial National Bank and it is clear in Franchise Tax Board and has been held repeatedly and consistently by the Supreme Court that federal courts determining their own jurisdiction are obligated to construe the complaint as well pleaded, omitting to plead federal questions in the rare case where the federal judicial remedy is exclusive, whatever its scope, cannot change that a cause of action arises under federal law and may either be filed there by a plaintiff or removed there by a defendant.

THE COURT: Well, except that Beneficial also holds that, quote, a defense that relies on an exclusive effect of a prior federal judgment or the preemptive effect of a federal statute will not provide a basis for removal.

And in Beneficial, what the Supreme Court held and held that there's only in unique cases where the -- where a defense will give rise to removal jurisdiction. And what they said, and I quote, is: The long-standing and consistent construction of the NBA as providing exclusive cause of action for usury against national banks, plus the

special nature of federally chartered banks, those two rationales combined to set that case, set suits against national banks under the NBA, to justify removal from state court.

Here, it doesn't seem like we have either of those principles. One, we certainly don't have Supreme Court construction of the FDIA as providing the exclusive cause of action for usury actions against state banks. In fact, we have a circuit split on that exact issue. And we also don't have the special nature of a federally chartered bank. We have state-chartered banks who are typically governed and overseen by state banks. So it seems like neither of the principles relied upon by Beneficial in finding that to be an unique case where removal is appropriate apply in this case under the FDIA.

MS. HLETKO: Your Honor, the reference in Beneficial to the inability of a defendant to invoke the federal courts where there is a preemption defense, I think referred to the Rivers (ph) case, and I think the quote Your Honor read is from this issue of preclusion, right.

Suppose that the defense -- that there were a defense here of preclusion, that would not provide complete preemption. That would -- that would be a defense and the case would, therefore, not be removable to federal court.

But here, where you have a claim that unavoidably

arises under federal law because it has to be determined -- deemed specifically with reference to Section 27, there effectively is no such thing as a Colorado state law usury claim against a loan made by a federally insured state-chartered bank.

The Court is absolutely correct that we do not have a Supreme Court opinion that says precisely that; but what we do have is Beneficial National Bank that says that with respect to the National Bank Act, and we also have Section 27 and the Third, Fourth and Fifth Circuits saying that Congress -- recognizing that Congress patterned Section 27 after Sections 85 and 86 specifically to prevent interest-rate discrimination against loans originated by federal insured state banks.

So Section 27, like Section 85 and 86, provide standards governing the interests that a federally insured state bank may charge and the exclusive judicial remedy for any violation. And that's what makes this case different than any other federal defense.

The issue is that claim -- that Section 27 defines what the claim is and, therefore, this case arises under federal law. It could be filed in federal court or state court by a plaintiff and it could be removed to federal court by a defendant.

THE COURT: Don't the vast majority of cases --

granted, they are district court cases, they're not circuit cases. But don't the vast majority of cases disagree with that, at least with respect to somebody who is a servicer?

And here, most of these cases are the payday loan type cases, but I'm not sure why that matters. How does the fact that it's a payday loan, as opposed to the loans that your clients are involved with, affect the legal analysis that is laid out in any of those cases at all?

MS. HLETKO: Your Honor, with respect to the difference between these loans and payday loans, you are correct, in my view, that the interest rate shouldn't change the legal analysis. But I think it's important to recognize that -- that there is a world of difference between 500 percent APR and a 36 percent APR -- up to 36 percent APR, which is down the middle of the fairway in terms of what the CFPB, the OCC, the FDIC and the Fed have recognized as a responsible interest rate.

THE COURT: That may be, but I don't think any of the -- any of the courts who have addressed the issue, Salazar, amongst them, relied on the fact it was a 500 percent loan, as opposed to a 36.

Maybe what you are seeing is in the back of all those courts' minds, they said, Well, you know, I don't like these loans, so, therefore, I'm ruling against them. But that's not in any of legal analysis. And it seems like,

again, we have Krispin and Vaden and the Utah case on one side, and arguably Krispin and Vaden are both distinguishable -- I don't think the Utah case is -- and about 20 cases on the other side of the issue.

So I'm not saying just because there's more cases on one side than the other, that they necessarily have the right -- the correct legal analysis. But your distinguishment in your briefing was, Well, those are payday loan cases, but I'm not seeing how that matters as part of the legal analysis.

MS. HLETKO: That's correct, Your Honor. It's not relevant to the legal distinction. But what is relevant to the legal distinction is that those cases, in particular, Salazar, did not the benefit of the decision in Beneficial National Bank; they did not conduct the Tenth Circuit's test for preemption. And they neglected to consider the principle in Astoria Federal Savings that Congress enacted Section 27 with the background assumption that the common law valid-when-made doctrine would apply.

And respectfully, Your Honor, if the Court has any concerns on that particular issue, it could request the views of the FDIC.

THE COURT: Okay. Anything further?

MS. HLETKO: I just want to touch a bit more on this issue of the service provider question.

The federal banking law specifically contemplates that federally insured banks will enter into relationships with third parties to provide services in connection with their lending program. As discussed in Sawyer, Congress has endorsed these relationships by granting the FDIC the power to examine both banks and the third parties who provide these services in the Bank Service Company Act, Section 1867C. This case is a Heartland case with respect to the services that the FDIC guidance and regulation contemplates.

THE COURT: Is it in the sense that, I think what the allegations are is that the note is being made on Day One, there is an agreement in place that two days later, Avant will purchase every single one of these notes and then will take everything from it, not just service it, but be the ones financially liable if the things were to fall apart, gains, any benefits if it doesn't fall apart? That seems like a different relationship than simply a servicer who is going out and making sure that payments are made in a timely manner, sending notice letters if they are not made if a timely manner, but who is not ultimately on the hook if the payments aren't timely made.

So, one, my question is: Is that a distinction? And then, two: If the -- if Avant couldn't come to Colorado and seek these type of loans on its own -- and I think it's conceded that they couldn't -- that that would be usurious,

if they were the ones to issue the loans -- is this arrangement just simply a backdoor around that in that if -- if it is assured that within two days of making the loan, Avant is going to purchase every single one of these and then become in charge of it, is this a backdoor around that usury requirement by using the state bank to avoid the usury laws?

MS. HLETKO: Your Honor, it's first important to emphasize again that the state does not allege that Avant makes these loans and Avant does not make any loans.

THE COURT: Right, I get that.

MS. HLETKO: Right. So to -- but with respect to your question about whether the distinction matters, it does not matter to the preliminary jurisdictional question before the Court on this motion.

A true lender, which is another way of describing the relationship that the Court just laid out, is a legal conclusion, and there is no exception in Section 27 for assertions that a bank is not a true lender.

The Court does not need to resolve that legal question to find that the well-pleaded complaint asserts a cause of action arising under federal law, and that the claims, therefore, are completely preempted.

And that determination, as the Court said, as the Tenth Circuit said in Schmelling and as the Supreme Court

said in Beneficial National Bank, is preliminary to consideration of these merits.

The factual allegations embedded in the complaint show that the complaint well-pleaded alleges a cause of action arising under federal law. And, in particular, the loan agreement referenced in paragraphs 21, 24 and 37 of the amended complaint unequivocally state that the WebBank is the lender. And, again, the Administrator does not dispute that.

It is also important to note that the Court in Sawyer rejected in every respect the argument that a technology service provider was the true lender in analogous circumstances. WebBank has the same interest in the loans here as in Sawyer and FDIC regulates these arrangements and recognizes that they do not insulate banks from responsibility for the loans.

It would make no sense for a plaintiff to be able to avoid federal jurisdiction simply by asserting a true lender theory, which a plaintiff could, based on any number of counter factual assertions regarding the relationship between a bank and its service providers or assignee, which is in the well-pleaded complaint rule as it relates to a federal court determining is own jurisdiction is so important here.

And the Court, in this case, doesn't even have to

guess as to whether federal jurisdiction was artfully plead and because we even have two versions of the complaint filed a few weeks apart. The original complaint purposely failed to mention WebBank in any respect at all. A few weeks later, the Administrator filed an amended complaint that did acknowledge that WebBank makes the loans and reserved, limited the claims to loans that are made by WebBank and then assigned to Avant.

Plaintiffs are allowed to choose their own cause of action, but they are not allowed to choose causes of actions that don't exist, characterizing legal conclusions as factual allegations. Because under the amended complaint well-pleaded here WebBank made the loans, Congress has supplied the subjective standards and created a federal cause of action to remedy violations of those standards. And Congress has made clear that the judicial remedy is exclusive for claims within its scope, the Administrator's claims are completely preempted.

THE COURT: Thank you.

MS. HLETKO: Thank you, Your Honor.

THE COURT: Anything further from either side on this?

MR. FRANT: If I may briefly, Your Honor.

THE COURT: Sure.

MR. FRANT: There is a reference to the initial

complaint in the amendment of the complaint and I think in the briefs, there is a reference to artful pleading, which is -- arises when a plaintiff avoids stating a federal element that is a necessary element of a cause of action.

Here, there's no question that the two claims stated in the complaint rely solely on Colorado law and requiring no federal element to state a valid claim as set forth in the statute. And so it's clear.

THE COURT: But the defendant's argument is that if there's complete preemption, your only possible claim can be a federal claim; you can't have a state law claim.

MR. FRANT: That is their argument. I just wanted to be clear about the application of this artful-pleading concept, and it really does not apply here.

In fact, the case that is cited in the defendant's brief is this West Virginia versus CashCall case. And there, the allegations were the same as we have here, where the Attorney General of West Virginia in that case asserted claims against the purchaser of bank loans and didn't name the bank. And the Court said that is actually not artful pleading.

THE COURT: Okay.

MR. FRANT: Ms. Hletko mentioned the Amicus brief filed by the OCC, the Madden case.

THE COURT: Right.

MR. FRANT: And I just wanted to point out that the OCC also filed an Amicus brief in the Salazar case with Judge Daniel. And I think the positions taken by the OCC in those two cases illustrate the important difference between a defense of federal preemption and complete preemption because in Judge Daniel's case, the OCC was quite clear that there is no completely preemption. Same thing with the Sawyer case from Utah, you will note in that decision the Court is careful to say that, Well, removal is not at issue in this case. And so we distinguish Salazar and some of the other cases by noting that we don't have a complete preemption question here.

THE COURT: Thank you.

Okay, thank you everybody. I'm also going to take this matter under advisement. I think that there are complex issues that will require further research and writing on it.

I note that the same issue was before, I think it's Judge Brimmer in another case. There is also a motion to consolidate the two cases, which I think ultimately at some point means that I don't write on this issue. We would need to see what Judge Brimmer does because he has the lower-numbered case in this.

But I appreciate the argument from everybody and I will take this under advisement.

MR. FRANT: Thank you.

MS. HLETKO: Thank you, Your Honor.

(Whereupon, the within hearing was then in conclusion at 3:06 p. m.)

I certify that the foregoing is a true and correct transcript to the best of my ability to hear and understand the audio recording and based on the quality of the audio recording from the above-entitled matter.

/s/ Carol Patterson November 23, 2017

Signature of Transcriber Date