**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 17-cv-0620-WJM-STV

JULIE ANN MEADE, Administrator, Uniform Consumer Credit,

     Plaintiff,

v.

AVANT OF COLORADO, LLC, d/b/a Avant, and
AVANT, INC.,

     Defendants.

---

## ORDER ADOPTING RECOMMENDATION AND REMANDING CASE

---

Now before the Court in this financial regulation action is the Plaintiff's Motion to Remand for Lack of Subject Matter Jurisdiction (ECF No. 28 (the "Motion)), and the Recommendation entered by U.S. Magistrate Judge Scott T. Varholak that Plaintiff's Motion should be granted (ECF No. 62 (the "Recommendation")).  For the reasons explained below, the Recommendation is adopted, the Motion is granted, and this case will be remanded to Denver District Court.

## I.  PROCEDURAL BACKGROUND

This action seeking to enforce Colorado statutes is brought by Plaintiff, Julie Ann Meade, the Administrator of the Colorado Uniform Consumer Credit Code (the "Administrator") against Defendants Avant of Colorado, LLC and Avant, Inc. (together, "Avant").

The Administrator filed this action in Denver District Court, alleging Avant had violated Colorado's statutory limits on excessive finance and delinquency charges

Colorado Revised Statutes §§ 5-2-201 & -203, as to certain consumer credit loans

further described below, and also that the terms of those loans included an unlawful

choice of law provision, in violation of Colorado Revised Statutes § 5-1-201(8).  (*See*

*generally* ECF No. 6.)

Avant removed the action on March 9, 2017 under 28 U.S.C. § 1441(a), arguing

that this Court has federal subject matter jurisdiction under 28 U.S.C. § 1331 "because

Congress has completely preempted the state law claims at issue in this case,"

specifically, that Section 27 of the Federal Deposit Insurance Act (as amended by the

Depository Institutions Deregulation and Monetary Control Act of 1980, Pub. L. No. 96-

221 ("DIDA" or "DIDMCA")), codified at 12 U.S.C. § 1831d,[1] "provides the exclusive

cause of action for the harm alleged by the Administrator," and allows Avant to impose

finance and delinquency charges in excess of what Colorado law would permit,

because Avant's loans were initiated by WebBank, a federally insured bank chartered

in Utah, where comparatively permissive usury laws would permit the charges and

interest at issue here.  (ECF No. 1 ¶¶ 13, 21–22.)

The Administrator filed her Motion to Remand for Lack of Subject Matter

Jurisdiction on March 31, 2017.  (ECF No. 28 (the "Motion").)  The Motion has been

fully briefed, including multiple briefs submitted by *amici curiae* in the banking and

---

[1] Some decisions cited in this Order cite this statute as DIDA, while others refer to it as the FDIA, or more specifically, Section 27.  For consistency with the Recommendation and the parties' briefing, the Court uses "Section 27," interchangeably with citation to 12 U.S.C. § 1831d.

lending industry.  (*See* ECF Nos. 41, 44-1, 49, 51, 58.)[2]  The undersigned referred the

Motion to United States Magistrate Judge Scott T. Varholak for a Recommendation.

Judge Varholak held oral argument on the Motion (ECF Nos. 59, 61), and entered his

written Recommendation that the Motion should be granted (ECF No. 62).  Avant timely

filed an Objection to the Recommendation pursuant to Federal Rule of Civil Procedure

72(b) (ECF No. 69); an additional *amicus* brief was filed by WebBank in support of

Avant's Objection (ECF No. 68-1); and the Administrator has responded (ECF No. 73).

## II.  FACTUAL BACKGROUND

No party objects to the Recommendation's summary of the relevant factual

background, which, in the interest of simplicity, the Court adopts  in full and

incorporates herein:

> The Administrator is authorized to enforce compliance with
> the Colorado Uniform Consumer Credit Code (UCCC), *see*
> *generally* Colo. Rev. Stat. § 5-6-104, including conducting
> investigations of violations of the UCCC, *id.* §§ 5-6-106,
> 5-2-305, issuing cease and desist orders for violations of the
> UCCC, *id.* § 5-6-109, and initiating civil actions against
> creditors "for making or collecting charges in excess of those
> permitted by this code," *id.* § 5-6-114.  In a civil action, the
> Administrator may seek injunctive relief "to restrain a person
> from violating" the code, *id.* § 5-6-111, and to prevent a
> creditor or person from "[m]aking or enforcing
> unconscionable terms or provisions of consumer credit
> transactions," or engaging in fraudulent conduct to induce
> consumers to enter credit transactions, *id.* § 5-6-112.  The

---

[2] A closely related Motion to Remand has been fully briefed and is pending in *Meade v. Marlette Funding LLC*, Case No. 1:17-cv-0575-PAB-MJW (D. Colo.), while in another action, *Cross River Bank v. Meade*, Case No. 1:17-cv-0832-PAB-KMT, the plaintiff filed suit against the Administrator, affirmatively seeking declaratory and injunctive relief from the Administrator's enforcement action, and the Administrator has filed a Motion to Dismiss raising largely the same jurisdictional issues addressed here.  Additional *amicus* briefs have been filed in both of those actions, and the Court is advised of the arguments raised.

Administrator may seek civil penalties and refunds to consumers against creditors charging fees in excess of those allowed by the UCCC. *Id.* § 5-6-114.

Defendant Avant of CO, a limited liability company organized under the laws of Delaware, and a subsidiary of Defendant Avant, Inc., applied to the Administrator for a Colorado supervised lender's license in March 2013. [#6 at 2, 4] According to the Administrator, Avant of CO sought the license for the purpose of "making (*i.e.*, originating) small installment loans of $1,000 or less" and "making (*i.e.*, originating) unsecured loans or loans secured by personal property and/or autos." [*Id*. at 5] Avant of CO became a Colorado supervised lender. [*Id*. at 6]

Avant, Inc. entered into a lending program agreement with WebBank, a Utah-chartered industrial bank in 2014. [*Id*. at 25] Pursuant to the agreement, WebBank makes loans to consumers [*id*. at 27], who apply for and obtain loans through Avant, Inc.'s website ("Avant Loans") [*id*. at 7-8]. Within two business days of when the Avant Loans are made, WebBank sells the loans to third-party purchasers, including Avant, Inc., or an Avant, Inc. non-bank affiliate. [Id. at 28; #41 at 4]

The Administrator argues that WebBank is "not the true lender of the Avant Loans" that it sells to Avant, Inc. or its affiliates because "WebBank does not bear the predominant economic interest in the loans." [#6 at 33] For example, Avant, Inc. paid the implementation fee to initiate the lending program, paid all of WebBank's legal fees in the program, bears all of the expenses incurred in marketing the lending program to consumers, determines which loan applicants will receive Avant Loans and bears all costs of making these determinations, ensures the program complies with federal and state law, assumes responsibility for all servicing and administration of the Avant Loans "even during the period before WebBank sells the loans to Avant, Inc. or its affiliates," and assumes responsibility for all communications with loan applicants and consumers who receive Avant Loans. [*Id*. at 34(a)-(j)] Additionally, Avant, Inc. bears all risk of default, and indemnifies WebBank against all claims arising from WebBank's participation in the lending program. [*Id*. at 34(l)] Avant, Inc., along with the other non-bank entities, collects 99% of the profits on the loans while

"WebBank's share in the profit is only approximately one percent." [*Id*. at 34(o); *see also* #28 at 4]

The Administrator alleges that a primary purpose of WebBank's arrangement with Defendants "is to allow Avant, Inc. or other non-banks to circumvent state laws, including Colorado laws, that limit the interest rates and other finance charges that may be assessed on the Avant Loans." [#6 at 29] Avant of CO and Avant, Inc. "have undertaken direct collection of payments from or enforcement of rights against consumers arising from" these loans [*Id*. at 19], and collect delinquency charges on the loans for late payments [*Id*. at 22-23]. Defendants "have made or collected charges from consumers" on these loans "which exceed the maximum finance charges that are permitted for supervised loans under Colorado Law." [*Id*. at 20] The written agreements evidencing the Avant Loans also purport to apply Utah state law to the agreements. [*Id*. at 24]

In January 2016, the Administrator conducted a compliance examination of Avant of CO, pursuant to Colo. Rev. Stat. § 5-2-305. [*Id*. at 36] In the subsequent report of examination, the Administrator informed Avant of CO that it was charging finance and delinquency charges in violation of Colorado law, and that the loan agreements providing for the application of Utah law also violated Colorado law. [*Id*. at 37] The Administrator directed Avant of CO to issue refunds to consumers for the excess charges and fees, and to apply Colorado law to any loan agreements. [*Id*. at 38] Avant of CO responded that its relationship with WebBank preempted Colorado finance charge limits and choice of law restrictions. [*Id*. at 39] The Administrator rejected this position and again requested that Avant of CO take corrective action. [*Id*. at 40] Avant of CO refused. [*Id*. at 41]

(ECF No. 62 at 2–4 (citations as in original; footnote omitted).)

## III. LEGAL STANDARDS

## A. Review Under Federal Rule of Civil Procedure 72(b)

When a magistrate judge issues a recommendation on a dispositive matter,

Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de*

*novo* any part of the magistrate judge's [recommendation] that has been properly objected to." An objection to a recommendation is properly made if it is both timely and specific. *United States v. One Parcel of Real Property Known as 2121 East 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996). An objection is sufficiently specific if it "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Id.* In conducting its review, "[t]he district court judge may accept, reject, or modify the recommendation; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* Here, Avant filed a timely and sufficiently specific Objection (ECF No. 69), and the Court engages in *de novo* review.

**B.    Federal Question Removal & Complete Preemption**

A case that has been removed to federal court pursuant to 28 U.S.C. § 1441 must be remanded back to state court if, at any time prior to final judgment, the federal court finds that it lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). The party invoking federal jurisdiction via removal has the burden of showing that removal is proper. *Lindstrom v. United States*, 510 F.3d 1191, 1193 (10th Cir. 2007) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)). Courts must strictly construe the requirements of removal jurisdiction and "all doubts are to be resolved against removal." *Fajen v. Found. Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982).

In the absence of diversity of citizenship, a case may be tried in federal court when the civil action arises "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; *see also Pan Am. Petroleum Corp. v. Superior Court of Del.*

*In and For New Castle Cnty.*, 366 U.S. 656, 663 (1961) (there is no federal question jurisdiction "unless it appears from the face of the complaint that determination of the suit depends upon a question of federal law.").

"[A] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action . . . and the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal." *Id.* at 663 (quoting *Gully v. First Nat'l Bank*, 299 U.S. 109, 112–13 (1936)). This "well-pleaded complaint rule" provides that "the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99 (1987).

"The fact that a court must apply federal law to a plaintiff's claims or construe federal law to determine whether the plaintiff is entitled to relief will not confer subject matter jurisdiction" *Dunlap v. G&L Holding Grp. Inc.*, 381 F.3d 1285, 1291-92 (11th Cir. 2004) (emphasis in original); *Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1154 (10th Cir. 2004). Nor is it be enough that an asserted or anticipated defense "relies on the preclusive effect of a prior federal judgment, or the pre-emptive effect of a federal statute." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003) ("*Beneficial*") (citing *Rivet v. Regions Bank of La.*, 522 U.S. 470 (1998)); *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1 (1983); *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1204 (10th Cir.

2012) ("Ordinarily, neither the plaintiff's anticipation of a federal defense nor the defendant's assertion of a federal defense is sufficient to make the case arise under federal law." (internal quotation marks omitted; alterations incorporated)); *Felix*, 387 F.3d at 1154 ("a federal defense, even one relying on the preclusive effect of a federal statute, is not enough to authorize removal to federal court.").

However, as a corollary to the well-pleaded complaint role, the complete preemption doctrine allows, in limited circumstances that "a state law cause of action may be removed to federal court on the theory that federal preemption makes the state law claim necessarily federal in character." *Devon*, 693 F.3d at 1203 (internal quotation marks omitted).

The doctrine of complete preemption should not be confused with ordinary preemption, which occurs when there is the defense of "express preemption," "conflict preemption," or "field preemption" to state law claims. Express preemption is limited to those situations where a federal statute expressly preempts state law. *Arizona v. United States*, 567 U.S. 387 (2012). Conflict preemption contemplates those situations where it is impossible to comply with both federal and state law, and state law creates an obstacle to the congressional intention in enacting a federal statute. *Id.* Field preemption occurs where a pervasive framework leaves no room for the state to act, or where the federal interest is so dominant that it precludes enforcement of state law on the same subject. *Id.* However, these concepts are distinct from complete preemption, *Felix*, 387 F.3d at 1156, providing only a federal "defense to the allegations," *Caterpillar*, 482 U.S. at 392. As a mere defense, however, the "preemptive effect of a

federal statute . . . will not provide a basis for removal." *Beneficial*, 539 U.S. at 6. "[A] state cause of action may not be viable because it is preempted by a federal law—but only if federal law provides its own cause of action does the case raise a federal question that can be heard in federal court." *Dutcher v. Matheson*, 733 F.3d 980, 986 (10th Cir. 2013)

"By contrast, when complete preemption exists, there is 'no such thing' as the state action, since the federal claim is treated as if it appears on the face of the complaint because it effectively displaces the state cause of action." *Lontz v. Tharp*, 413 F.3d 435, 441 (4th Cir. 2005) (quoting *Beneficial*, 539 U.S. at 11). Because this doctrine undermines a plaintiff's ability to plead claims under the law of his or her choosing, the Supreme Court has been "reluctant" to find complete preemption. *Id.* (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). Complete preemption has been characterized as "quite rare," *Dutcher*, 733 F.3d at 985 (internal quotation marks omitted), representing an "extraordinary pre-emptive power," that "should not be lightly implied," *Devon* 693 F.3d at 1204.

Indeed, the Supreme Court has recognized complete preemption in only three areas, specifically, cases involving § 301 of the Labor Management Relations Act of 1947; § 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"); and—as most relevant here—in actions for usury against national banks under the National Bank Act. *See Beneficial*, 539 U.S. at 10–11 (National Bank Act); *Metro. Life*, 481 U.S. at 66--67 (ERISA § 502(a)); *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists*, 390 U.S. 557, 560 (1968) (Labor Management Relations Act § 301).

For complete preemption to apply, the challenged claims must "fall within the scope of federal statutes intended by Congress completely to displace all state law on the given issue and comprehensively to regulate the area." *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1221 (10th Cir. 2011). The Tenth Circuit has explained:

> We read the term ["complete preemption"] not as a crude measure of the breadth of the preemption (in the ordinary sense) of a state law by a federal law, but rather as a description of the specific situation in which a federal law not only preempts a state law to some degree but also substitutes a federal cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal.

*Schmeling v. NORDAM*, 97 F.3d 1336, 1339 (10th Cir. 1996).

Consequently, the Tenth Circuit has held that a claim of complete preemption requires a two-part analysis. The court must ask both "whether the federal regulation at issue preempts the state law relied on by the plaintiff," and also "whether Congress intended to allow removal in such a case, as manifested by the provision of a federal cause of action to enforce the federal regulation." *Devon*, 693 F.3d at 1205-06 (citation and internal punctuation omitted). Courts should usually begin with the second of these two inquiries. *Id.*; *accord Schmeling*, 97 F.3d at 1343 (interests of "comity and prudence" dictate that courts addressing remand should avoid needlessly addressing the first question, which will frequently require a discussion of the merits of the preemption defense).

# IV.  ANALYSIS

## A.    The Court Adopts the Recommendation

Judge Varholak's Recommendation began by observing that Section 27 "allows a state bank to charge interest rates permitted in its home state on loans made in another state, even if that interest rate would be unlawful in the state where the loan is made."  (*Id.* at 8–9.)  The Recommendation noted this is similar to Sections 85 & 86 of the National Bank Act ("NBA"), which "allo[w] national banks to charge interest rates to the extent allowed by their home states, notwithstanding the laws of the states in which the loans are made," and "se[t] forth the elements of a usury claim against a national bank."

Judge Varholak also summarized the holding in *Beneficial National Bank v. Anderson*, namely, that Sections 85 & 86 of the NBA "'provide the exclusive cause of action' for usury claims against national banks and 'there is . . . no such thing as a state-law claim of usury against a national bank' and thus the NBA completely preempts state law usury claims against national banks."  (*Id.* at 9 (quoting *Beneficial*, 539 U.S. at 11).)

Noting that the Supreme Court has not resolved "whether the FDIA completely preempts usury claims against state-chartered banks," the Recommendation acknowledged that "courts have split" on the question of whether Section 27 completely preempts usury claims against state chartered banks" (*id.* at 10 (collecting cases),[3] but

---

[3] Cases reflecting this divided authority include *Thomas v. U.S. Bank Nat. Ass'n ND,* 575 F.3d 794, 797 (8th Cir. 2009) ("Complete preemption does not exist here because the language of [Section 27] unlike the NBA, does not reflect Congress' intent to provide the exclusive cause of action for a usury claim against a federally-insured state-chartered bank.  To the contrary, a

also concluded that this Court "need not venture into this uncertain territory," because in this case "the Administrator has not asserted a claim against a state bank" (*id.* at 11).

The Recommendation reviewed numerous court decisions which "have repeatedly held that when claims are asserted against a non-bank entity, complete preemption does not apply . . . even if the non-bank defendant has a close relationship with a state or national bank." (*Id.* at 11–12.)[4]

---

close examination of the statutory language indicates Congress very clearly intended the preemptive scope of [Section 27] to be limited to particular circumstances."; recognizing disagreement with *Vaden II*); *Discover Bank v. Vaden,* 489 F.3d 594, 606 (4th Cir. 2007) (*"Vaden II"*) ("we are hard-pressed to conclude other than that Congress intended complete preemption of state-court usury claims under the FDIA"); *rev'd on other grounds,* 556 U.S. 49 (2009) (*"Vaden III"*) (holding the court lacked federal question jurisdiction to compel arbitration; "the Court of Appeals misidentified the dimensions of 'the controversy between the parties * * * the whole 'controversy between the parties' [did] not qualify for federal-court adjudication"); *and In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 295 (3d Cir. 2005) (*"Community Bank"*) ("[Section 27] completely preempts any state law attempting to limit the amount of interest and fees a federally insured-state chartered bank can charge").

[4] Decisions cited by the Recommendation include: *Cmty. State Bank v. Knox*, 523 F. App'x 925, 930 (4th Cir. 2013) (*"Knox II"*) (no federal subject-matter jurisdiction where plaintiff did not bring claims against bank); *Community Bank*, 418 F.3d at 296–97; *Commonwealth of Pennsylvania v. Think Fin., Inc.*, 2016 WL 183289, at *13 (E.D. Pa. Jan. 14, 2016) (*"Think Finance"*) ("The Third Circuit . . . distinguishes between claims against banks and claims against non-banks for purposes of preemption" (citing *Community Bank*, 418 F.3d at 296); "that there are no claims made against a bank is sufficient to avoid preemption"); *Cmty. State Bank v. Knox*, 850 F. Supp. 2d 586, 601 (M.D.N.C. 2012) (*"Knox I"*) ("[The] Plaintiffs chose to bring claims against only the non-bank entities and have asserted potential claims regardless of whether those entities are the true lenders or only the servicers of the loans at issue. As a result, the state-law claims . . . are simply state law claims against non-bank entities, and are not completely preempted by federal law."), *aff'd*, *Knox II*, 523 F. App'x 925; *Dandy v. Wilmington Fin., Inc.*, 2010 WL 11493721, at *6 (D.N.M. May 3, 2010) ("Plaintiff is not suing . . . any . . . . federal financial institution. The sole Defendant is [a non-bank]. * * * Because the alleged federal nature of Plaintiff's claim is not clear on the face of the Complaint, Defendant is using preemption only as a defense, which is generally not grounds for removal."); *W. Virginia v. CashCall, Inc.*, 605 F. Supp. 2d 781, 788 (S.D.W.Va. 2009) (*"CashCall"*) ("[T]he State's usury law claim is directed against CashCall, which is not a bank, and therefore, the claim does not invoke and cannot be completely preempted by the FDIA."); *Flowers v. EZPawn Okla.*, Inc., 307 F. Supp. 2d 1191, 1196, 1204 (N.D. Okla. 2004) (no complete preemption where plaintiff's claims were only brought against non-bank defendants); *and Colorado ex rel. Salazar v. Ace Cash Exp., Inc.*, 188 F. Supp. 2d 1282, 1285 (D. Colo. 2002) (*"Ace Cash"*) ("Defendant and the national bank are separate entities and their relationship does not give rise to complete

Consistent with these several decisions, and particularly noting the 2002 decision by Senior U.S. District Judge Wiley Y. Daniel of this Court in *Ace Cash*, *supra* note 3, the Recommendation resolved the present issue in the same way. Emphasizing that "the Administrator only asserts . . . . claims against [Avant]," "does not assert any claims against WebBank," and that "the relief sought is related to the charges that [Avant has] imposed on the loans [it] purchased from WebBank" (*id.* at 15), and after distinguishing cases and arguments advanced by Avant which are further addressed below, the Recommendation concluded that the "Administrator's state law claims are directed against [Avant]," which is not a state-chartered bank, and "[t]he claims thus are not completely preempted by the FDIA, even if the Court were to find that complete preemption applies to usury claims against state-chartered banks" (*id.* at 22).

The Court is broadly persuaded by the analysis set out in the Recommendation, and, applying *de novo* review under rule 72(b), agrees with Judge Varholak's view of the applicable law, and adopts and affirms the Recommendation in its entirety.

**B.      Avant's Objections are Unavailing**

In its Objection, Avant argues that Judge Varholak erred in four ways. Having reviewed the Motion, the Recommendation, Avant's Objection, and all of the related briefs, the Court organizes its further discussion by addressing each of Avant's four arguments in turn.

      1.      Complete Preemption Under Section 27

            a.      *"Any loan . . . made" by a Federally-Insured Bank*

---

preemption under the NBA. * * * Defendant's relationship with [a bank] does not elevate Defendant's status to that of a national bank.").

Avant argues that the recommendation mis-applied the complete preemption doctrine inasmuch as Avant argues that Section 27 applies to "'any loan . . . made' by a state-chartered bank" and "makes no distinction between a cause of action against *banks* versus one against 'non-bank defendants.'" (ECF No. 69 at 4 (quoting 12 U.S.C. § 1831d); emphasis in original.)  Relatedly, Avant argues that under common law principles the assignee of a loan "steps into the shoes of the assignor" (*id.* at 5 (internal quotation marks omitted)), and thus "the complete preemption of state usury law [by Section 27] survives the assignment of the loans . . . to Avant," meaning that complete preemption should apply regardless of whether the loan "is held by WebBank or assigned to Avant . . . or its affiliates or any other third party" (*id.* at 6).  Thus, in Avant's view, it is immaterial whether a loan is presently "held" by a State-chartered bank, so long as it was originally "made" by such a bank.

In support, Avant argues that the text of Section 27 "makes no distinction between a cause of action against banks versus one against 'non-bank defendants,'" and that an "exclusive federal cause of action for bringing a usury claim" is set out by Section 27 which "is tied to the scope of preemption," and applicable to "'any loan . . . made' by a state-chartered bank," regardless of whether another entity later acquires rights in the debt or loan.  (ECF No. 69 at 5.)

However, while Avant's "any loan . . . made" argument relies on isolating three words from the statute, the language of § 1831d as a whole defeats Avant's argument. Initially, the statute states its purpose is to prevent discrimination "against State-chartered insured depository institutions," and does not, on its face, state any purpose with regard to institutions other than federally-insured banks, much less a

Congressional intent to broadly foreclose state law actions or to permit removal to federal court.

Further, and significantly, the relevant text of § 1831d(a) states that "[a] *State bank* . . . . may, notwithstanding any State constitution or statute which is hereby preempted for the purposes of this section, . . . charge on any loan . . . or . . . note . . . or other evidence of debt, interest at a rate of not more than . . . the rate allowed by the laws of the State . . . where the bank is located." 12 U.S.C. § 1831d(a).[5] This language

---

[5] The statute in its entirety reads as follows:

**(a) Interest rates**

In order to prevent discrimination against State-chartered insured depository institutions, including insured savings banks, or insured branches of foreign banks with respect to interest rates, if the applicable rate prescribed in this subsection exceeds the rate such State bank or insured branch of a foreign bank would be permitted to charge in the absence of this subsection, such State bank or such insured branch of a foreign bank may, notwithstanding any State constitution or statute which is hereby preempted for the purposes of this section, take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of exchange, or other evidence of debt, interest at a rate of not more than 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where such State bank or such insured branch of a foreign bank is located or at the rate allowed by the laws of the State, territory, or district where the bank is located, whichever may be greater.

governs what charges a "State bank" may impose, but again, does not on its face

regulate interest or charges that may be imposed by a non-bank, including one which

later acquires or is assigned a loan made or originated by a state bank.

Moreover, the cause of action provided by § 1831d(b), does not on its face apply

to actions against non-banks, instead providing a cause of action to "the person who

paid" an excess rate of interest, who then "may recover in a civil action . . . *from such

State bank* . . . ." 12 U.S.C. § 1831d(b). Contrary to Avant's argument that the statute

"makes no distinction" between banks and non-banks, and that its cause of action does

not distinguish between bank and non-bank defendants, the statutory text in fact

provides for recovery "from [a] State bank," but is silent as to any remedy or recovery

against a non-bank such as Avant.

Under the first, and here dispositive, inquiry of the two-part complete preemption

analysis, the cause of action provided by § 1831d(b) does not manifest a Congressional

---

**(b) Interest overcharge; forfeiture; interest payment recovery**

If the rate prescribed in subsection (a) of this section exceeds the rate such State bank or such insured branch of a foreign bank would be permitted to charge in the absence of this section, and such State fixed rate is thereby preempted by the rate described in subsection (a) of this section, the taking, receiving, reserving, or charging a greater rate of interest than is allowed by subsection (a) of this section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. If such greater rate of interest has been paid, the person who paid it may recover in a civil action commenced in a court of appropriate jurisdiction not later than two years after the date of such payment, an amount equal to twice the amount of the interest paid from such State bank or such insured branch of a foreign bank taking, receiving, reserving, or charging such interest.

12 U.S.C. § 1831d

intent to allow removal of actions such as this one, which pleads only state law claims, brought against a non-bank entity. *See Devon*, 693 F.3d 1195. In sum, the Court is unpersuaded by Avant's "any loan . . . made" argument, as lacking a sound basis in the statutory text. The Court cannot agree that the language of § 1831d manifests a Congressional intent to allow removal, which should "not be lightly implied." *See id.* at 1204, 1205-06. Nor is the Court persuaded that § 1831d reflects Congressional intent to "completely to displace all state law," *Hansen*, 641 F.3d at 1221, including as to state regulation of lenders who are neither banks chartered in other states nor federally insured, or to displace state regulation of other, similarly situated non-bank defendants who violate state-law lending protections. Accordingly, this is not an instance that gives rise to the "rare" and "extraordinary" doctrine of complete preemption, and so removal was improper. *Cf. Dutcher*, 733 F.3d at 987 ("the absence of a federal cause of action precludes us from relying on complete preemption as a jurisdictional basis for the district court to act"); *accord CashCall*, 605 F. Supp. 2d at 786, 788 ("The totality of the Complaint shows that the State's suit is directed against a single, specific entity violating . . . state laws including the usury law—that entity is . . . not the Bank."; "as . . . in [*Ace Cash*] . . . [t]he Complaint *strictly* is about a non-bank's violation of *state* law. It alleges *no* claims against a . . . bank" (emphasis in original)). Whether or not Section 27 gives rise to a *defense* of preemption on the merits of Plaintiff's claims, it does not establish complete preemption or permit *removal* of the Administrator's exclusively state-law claims to federal court. [6]

---

[6] Even as to the question of whether § 1831d gives rise to complete preemption of claims *against banks,* courts which have held there is not such complete preemption have

b.    *Beneficial* and *Sawyer*

The Administrator correctly—and tellingly—points out that "Avant does not cite a single case that has relied upon its 'any loan . . . made' argument to conclude that usury claims against non-banks are completely prempted," and that "Avant's argument is contrary to the . . . decisions . . . [that] uniformly hold that Section 27 of the FDIA, and [§§ 85 & 86] of the National Bank Act do not apply to non-bank entities, and that state usury claims against such non-banks . . . are not completely preempted."  (ECF No. 73 at 3.)

In this respect, the Court agrees with the Administrator's argument against removal, with the Recommendation's conclusion that "[o]ther courts have consistently come to the same conclusion, especially when the plaintiff has pled facts suggesting that the non-bank is the true lender" (ECF No. 62 at 14), and with the conclusion of U.S. District Judge James A Beaty, Jr. in *Knox I* that "the weight of authority" supports "the conclusion that state law claims brought only against non-bank are *not* subject to complete preemption, even if the state law claims would have been subject to complete preemption if they had been brought against a national or state-chartered bank."  850 F. Supp. 2d at 598–99 (emphasis added; gathering additional authorities).

Avant's argument to the contrary relies principally on *Beneficial* and on *Sawyer v.*

_____

distinguished the text of § 1831d from the provisions of the NBA addressed in *Beneficial*, finding the preemption language in Section 27 too equivocal to give rise to complete preemption, in contrast to the relevant language in the NBA.  *See, e.g., Thomas,* 575 F.3d at 797; *Robinson v. First Hawaiian Bank*, 2017 WL 3641564, at *6 (D. Haw. Aug. 24, 2017) (finding the language of § 1831d "evinces a contingency—*i.e.*, state law is preempted *only if* and when a specific interest rate comparison test is met.  Since the language is unmistakably conditional . . . Congressional intent could not have been to completely preempt the field" (emphasis in original)); *Robinson v. Bank of Hawaii*, 2017 WL 2901333, at *5, 6 (D. Haw. July 7, 2017) ("The limiting language contained in [Section 27] does not reflect an intent by Congress to convert all state law usury claims into federal question causes of action.").

*Bill Me Later*, *Inc.,* 23 F. Supp. 3d 1359 (D. Utah 2014).  The Recommendation considered both at length, and neither supports Avant's complete preemption argument.

In *Beneficial*, borrowers sued the bank from which they obtained certain short-term loans, alleging common law usury and violation of a state statute limiting excessive interest.  539 U.S. at 4, 9.  The Supreme Court recognized complete preemption, holding the "the National Bank Act [NBA] provide[s] the exclusive cause of action for usury claims *against national banks*."  *See Id.* at 9 (emphasis added).  No less than eight times, the Supreme Court's discussion framed the issue as whether complete preemption applied to claims and remedies sought "*against* a national bank." *See id.* at 5–11; *see, e.g. id.* at 9 ("Only if Congress intended § 86 to provide the exclusive cause of action for usury claims *against* national banks would the statute" [give rise to complete preemption]" (emphasis added)); *id.* at 11 ("In actions *against* national banks [the NBA] supersede[s] . . . . state usury laws and create[s] a federal remedy . . . . that is exclusive" (emphasis added)).  Thus, neither the holding nor the reasoning of *Beneficial* provides any support to Avant's argument that complete preemption "travels with the loan," and should apply equally to claims brought against either banks or their assignees.  (*See* ECF No. 69 at 5.)

In *Sawyer*, the plaintiff used eBay/PayPal's "Bill Me Later" program to finance an online purchase.  23 F. Supp. 3d at 1360.  The Bill Me Later entity facilitated such loans and acted as a "service provider," performing credit checks and other services, *id*. at 1361, while the originating lender was a Utah-chartered, federally insured bank (first CIT Bank, later WebBank, the same bank involved in the lending program here), *id*. at

1360.  Similar to the facts here, WebBank generally sold the loans two days after they were originated, including to the Bill Me Later entity.  *Id.*  Plaintiff sued Bill Me Later, alleging violation of California statutes and usury law.  *See Id.* at 1360, 1361–62.  In granting Bill Me Later's motion to dismiss the claims under Rule 12(b)(6), U.S. District Judge Clark Waddoups held that "in light of the *express preemption* of Section 27 of the FDIA of Plaintiff's usury and late fee claims * * * Plaintiff cannot allege that Utah does not allow the interest rates and late fees disclosed and then charged" on the loans initiated by Utah banks.  *Id.* at 1370 (emphasis added).

*Sawyer* thus dealt with the defense of *express* preemption.  It did not address complete preemption, nor the relevant concerns of federal question jurisdiction and removal.  To the contrary, Judge Waddoups expressly described as "inapposite" and "inapplicable," cases cited which were "dealing . . . with the issue of complete preemption for removal jurisdiction."  *Id.* at 1369 (citing *Vaden II*, 489 F.3d at 602, and *Flowers*, 307 F. Supp. 2d at 1205).[7]

Thus neither *Beneficial* nor *Sawyer* dealt with the issue raised here, whether Section 27 gives rise to complete preemption permitting removal of state law claims asserted against a non-bank entity.  To the extent Avant argues that Section 27 should be read to incorporate the common law principle "that the assignee steps into the shoes of the assignor," the Court finds this reiteration of the "any loan . . . made" argument is insufficient to overcome the lack of either a textual basis or any prior case law

---

[7] To the extent *Sawyer* relied on *Beneficial* as "holding [an] action [was] expressly preempted" under the NBA, it mischaracterized the holding of *Beneficial* as addressing express preemption, rather than complete preemption.  *See Sawyer*, 23 F. Supp. 3d at 1363.

supporting Avant's argument that "complete preemption travels with the loan."

c.   *"Suing the Wrong Party"*

Avant's reliance on *Hogan v. Jacobson*, 823 F.3d 872, 880 (6th Cir. 2016) for the proposition that the administrator "may not evade complete preemption merely by suing the wrong party" is also unavailing.  (*See* ECF No. 69 at 5.)  Even assuming the analysis of *Hogan* (an ERISA case) applies here, the relevant inquiry under its analysis would be "whether the facts alleged in the complaint actually implicate a federal cause of action."  823 F.3d at 880.  As analyzed above, the Court is unpersuaded that the Administrator's state law claims, brought only against non-bank entities, implicate any federal cause of action.[8]

Moreover, the Court finds that this is not a case where the Administrator is "suing the wrong party" or manipulating her pleadings to avoid preemption.  As pled in the Complaint and summarized in the Recommendation, Avant provides the website through which customers apply for the Avant Loans, Avant develops the criteria for making loans, Avant decides which applicants will receive the loans, and Avant (or its affiliates) purchases the loans within two days after they are made by WebBank.  (*See* ECF No. 62 at 16; *see generally* ECF No. 6 ¶¶ 7–32.)  Avant also ensures the

---

[8] WebBank has not sought to intervene (perhaps lending support to both the Administrator's position that Avant is the "true lender," and an argument that Avant, not WebBank, is the real party in interest), but WebBank did file an *amicus* brief in support of Avant's Objection to the Recommendation.  (ECF No. 68-1.)  WebBank makes the same "wrong party" and "any loan . . . made" arguments which the Court has addressed above.  (ECF No. 68-1 at 1–2 (citing *Hogan*, 823 F.3d at 880).)  WebBank's passing citation to *David P. Coldesina, D.D.S., P.C. v. Estates of Simper*, 407 F.3d 1126, 1139 (10th Cir. 2005) is inapposite and equally unavailing.  (ECF No. 68-1 at 2.)  *Coldesina* did not address remand, but held that because a direct claim against an ERISA fiduciary was pre-empted, a derivative claim for vicarious liability based on the fiduciary's actions was also preempted.  407 F. 3d at 1139.  That conclusion has no bearing here.

program's compliance with state and federal law, services and administers the loans, bears all the risk on the loans in the event of default, pays all the legal fees and expenses related to the lending program, retains 99% of the profits on the loans, and indemnifies WebBank against all claims arising from WebBanks's involvement in the loan program.  (ECF No. 62 at 16.)  These circumstances are far closer to *CashCall* than to *Hogan*, or any other case cited by Avant, and the Court sees no impropriety in the Administrator having pled state law claims solely against Avant.  *See CashCall*, 605 F. Supp. 2d at 786–87 (concluding "[t]he Complaint as a whole . . . . is directed against CashCall, rather than the Bank," and finding an "absence of any indication that the State artfully pled its claims . . . to thwart federal question jurisdiction").

      2.    <u>Prior Cases Remanding Claims Brought Against Non-Banks Are Not Meaningfully Distinguishable</u>

Avant argues the Recommendation erred by relying on *Ace Cash* and other cases that found no complete preemption as to claims brought exclusively against non-bank defendants.  *See supra*, note 3.  Avant argues that whereas in *Ace Cash* the defendant was "an 'agent for loans made by [the bank],'" here Avant is the *assignee* of the loans originated by WebBank.  (ECF No. 69 at 7.)  According to Avant, the Recommendation "misses the legal significance of the assignment of loans," and Avant argues that it is this *assignment* which is the critical fact permitting removal of claims brought against Avant, as the assignee or purchaser of loans originated by WebBank, rather than merely a service provider or agent.  (*Id.* at 7.)  As analyzed above, however, the Court rejects Avant's argument that Section 27 completely preempts claims brought against non-bank assignees, or evinces an intent to have complete preemption "trave[l]

with loan."

Moreover, while Avant argues that the assignment of WebBank's loans makes this case most analogous to *Krispin v. May Dep't Stores Co.*, 218 F.3d 919, 924 (8th Cir. 2000), *Krispin* does not support a finding of complete preemption here. In *Krispin*, the plaintiffs were holders of credit cards issued by a department store, which were later assigned to a bank that was "a wholly-owned subsidiary of the store . . . established specifically for the purpose of taking over the store's credit card operations," under terms which permitted the store to unilaterally modify the credit terms. *Id.* at 923.

The Eighth Circuit found complete preemption of claims brought against the store under state law, agreeing that the store's assignment of the accounts was "fully effective to cause the bank, and not the store, to be the originator of appellants' accounts," given that "appellants' accounts are now controlled by the bank." 218 F.3d at 924. Noting that "the bank, and not the store . . . issues credit, processes and services customer accounts, and sets . . . interest and late fees," the court held that "in these circumstances . . . it makes sense to look to the originating entity (the bank) and not the ongoing assignee (the store), in determining whether the NBA applies." *Id.* Finding that "the real party in interest [was] the bank, not the store," the court held the "state law usury claims against the store therefore implicate the NBA" and were subject to complete preemption. *Id*. at 924 (emphasis added).

Thus, both the analysis and the result in *Krispin* rested on facts not present here. In *Krispin*, the *bank* was the assignee of the credit accounts and broadly in control of those accounts, leading the court to find that the bank was the real party in interest. Something close to the opposite holds true here, where the non-bank, Avant, is the

23

assignee of the loans, Avant has only a contractual relationship with WebBank, which plays only an ephemeral role in making the loans, then immediately sells them, and it is Avant which generally directs the fees and activities that allegedly violate state law. (*See* ECF No. 62 at 16.)  To the extent a "real party in interest" analysis akin to the analysis conducted in *Krispin* is appropriate in this case, the facts here would lead to the opposite conclusion.

The Court is also unpersuaded by Avant's argument that the Supreme Court's 2003 decision in *Beneficial* undermines the application of *Ace Cash* or other cases that preceded *Beneficial* and are unhelpful to Avant's arguments—a contention Avant advances even though it seems happy to rely on *pre-Beneficial* cases where they support its positions.   As detailed above, *Beneficial* did not address claims brought against a non-bank, and the Court sees no way in which *Beneficial* alters the conclusion in *Ace Cash*, or in the numerous cited cases to have reached similar conclusions where exclusively state law claims are properly pled only against non-bank defendants.  *See supra*, note 3.

Avant also cites *Vaden II*, 489 F.3d 594, and *Community Bank*, 418 F.3d 277, as ostensibly standing for the proposition that "usury claims as to loans originated by a state-chartered federally insured banks are completely preempted under Section 27." (ECF No. 69 at 9.)  As noted above, other courts have disagreed as to this conclusion, even as to claims plainly brought against state-chartered banks.  *Supra*, note 2.

Moreover, the cases cited by Avant do not support its argument here.  *Vaden* originated as a "garden-variety, state-law-based contract action" in which the "servicing affiliate" of a state-chartered bank sued to collect an unpaid credit card balance.  *Vaden*

24

*III*, 556 U.S. at 54; *see also Vaden II*, 489 F.3d at 597. The customer filed usury-related counterclaims, and the bank then sought to compel arbitration under the Federal Arbitration Act ("FAA"), claiming the counterclaims were completely preempted under Section 27, giving rise to federal jurisdiction. *Vaden II*, 489 F.3d at 597. The Fourth Circuit concluded it must first determine whether the bank was "the real party in interest with respect to . . . [the] counterclaims," reasoning that if the bank "is *not* the real party in interest . . . the FDIA does not apply because [the servicing affiliate] is not a bank, and therefore the counter-claims implicate no federal law." *Id.* at 601.

Engaging in a fact-specific analysis, the Fourth Circuit found the bank *was* the real party in interest, and went on to hold that Section 27 completely preempted the plaintiff's state law usury counterclaims, at least to the extent asserted "against a state-chartered, federally insured bank that is the real party in interest of a state court dispute." *See id.* at 603–04. The Supreme Court reversed, applying the rule that "[f]ederal jurisdiction cannot be predicated on an actual or anticipated defense . . . . Nor can federal jurisdiction rest upon an actual or anticipated counterclaim," 556 U.S. at 60, and holding that even "a completely preempted counterclaim remains a counterclaim and thus does not provide a key capable of opening a federal court's door," *id.* at 66.

Thus, even assuming that the Fourth Circuit's *Vaden II* opinion continues to have any persuasive force following its reversal, to have application here, Avant would need to show WebBank is the real party in interest to the Administrator's enforcement action, given that even the Fourth Circuit's analysis concluded that if the bank "is *not* the real party in interest . . . the FDIA does not apply." *Id.* at 601. Avant, however, has not

made a showing that WebBank (or any other federally-insured bank) is the real party in interest, instead relying on the far broader argument that complete preemption applies in perpetuity to *any* assignee of loans originated by WebBank. (*See* ECF No. 69 at 4–7.) *Vaden II* never stood for such a sweeping proposition, and the Court has already rejected Avant's argument that Section 27 creates complete preemption as to any non-bank assignee.

Thus, both Avant's emphasis on the "contractual shifting of rights through an assignment" and its reliance on *Vaden* are unavailing. (*See* ECF No. 69 at 9–10.) As with *Krispin*, to the extent complete preemption might depend on a real party in interest analysis, as conducted in *Vaden II*, the facts here must lead to the opposite result. Here, Avant is for all practical purposes in control of the Avant loans, and it has indemnified WebBank, whose role was short-lived and is now entirely in the past. In *Vaden II*, by contrast, the *bank* remained "the party in charge of setting the terms and conditions," and the set the guidelines implemented by the affiliate servicing provider, which the bank also indemnified. (*Compare* ECF No. 62 at 15 *and* ECF No. 6 *with Vaden II*, 489 F.3d at 602–03.)

Moreover, as the Recommendation observed, since the Supreme Court's reversal in *Vaden III*, the Fourth Circuit has held, on facts more applicable here, that "claims against . . . non-bank loan servicers fall squarely outside the scope of the FDIA." *Knox II*, 523 F. App'x at 929. Thus, the Fourth Circuit itself does not apply *Vaden II* as standing for the broad proposition advanced by Avant, namely, that Section 27 completely preempts all usury claims "as to loans originated by a state-chartered

federally insured ban[k]."  (ECF No. 69 at 9.)[9]

### 3. True Lender

Avant next objects that the Recommendation "wrongly conclude[d] that allegations that a bank was not the 'true lender' are sufficient to defeat federal jurisdiction."  (ECF No. 69 at 12.)  Avant claims that the issue of whether it is the "true lender" "is a purely legal question whether . . . factual allegations in the complaint . . . . are legally sufficient to treat Avant as the 'true lender' notwithstanding that it did not make the loans," and argues that this question "must be decided under federal law." (ECF No. 69 at 11–12.)

The Court  finds no error in the Recommendation's treatment of the Complaint's "true lender" allegations (ECF No. 6 ¶¶ 32–34), and finds, moreover, that this issue is not controlling of the Court's removal jurisdiction.  The Court disagrees with Avant's characterization that the Recommendation treated the "true lender" issue as controlling or sufficient by itself to warrant remand.  (*See generally* ECF No. 62 at 11–14.) Moreover, even if resolution of the Administrator's "true lender" allegations might support a *defense* of federal preemption (*i.e.*, if Avant can disprove the allegations and prove that WebBank is in fact the true lender), and even if Avant is correct that this issue may ultimately be undisputed or could be determined a matter of law, the Court

---

[9] Similarly, contrary to Avant's reliance on *Community Bank*, 418 F.3d at 295–96, at least one decision in the Third Circuit has since applied the lengthy analysis in *Community Bank* as "distinguish[ing] between claims against banks and claims against non-banks for purposes of preemption."  *Think Finance*, 2016 WL 183289, at *13; *Community Bank*, 418 F.3d at 296 ("Sections 85 and 86 of the NBA and Section 521 of the DIDA apply only to national and state chartered banks, not to non-bank purchasers of . . . loans * * * Several courts have explored the issue of removal in cases involving complaints very similar . . . and found removal improper." (citing with approval to *Flowers* and *Ace Cash*, while distinguishing *Krispin*)).

finds this at most gives rise to a preemption defense, but does not reflect complete preemption, nor create a federal question permitting removal under the well-pleaded complaint rule. *See Caterpillar*, 482 U.S. at 398–99; *Vaden III*, 129 S.Ct. at 1272 ("Federal jurisdiction cannot be predicated on an actual or anticipated defense."). To the extent that Avant is simply arguing that the Administrator's allegations should not by themselves control federal jurisdiction, that argument is contrary to the well-pleaded complaint rule.

4.     Valid When Made Rule

Lastly, Avant argues that the administrator's claims "go to the core of WebBank's powers to originate and sell loans that include rates and fees" as permitted under Utah law, and "is an attack on the bank in the guise of an attack on an assignee," *i.e.*, Avant. (ECF No. 69 at 13–14.) Therefore, Avant argues, the Recommendation conflicts with the long-established "valid-when-made" rule by allowing "that a contract free from usury in its origins can be made usurious by subsequent transactions." (*Id.* at 15 (citing *Gaither v. Farmers & Mechanics Bank of Georgetown*, 26 U.S. 37 (1828) and *Nichols v. Fearson*, 32 U.S. 103 (1833)).)

*Amici* likewise emphasize the importance of the valid-when-made rule, describing this as a "cardinal rule" of banking law. (*See, e.g.,* ECF No. 49 at 5 (quoting *Nichols v. Fearson*, 32 U.S. 103 (1833)).)

*Amici,* generally-speaking, are organizations that represent the interests of banks, lenders, and the purchasers or assignees of loans initiated by banks. They argue, generally speaking, that lending programs similar to the Avant loans allow the financial industry to extend credit, including for lower costs, and to consumers who

might otherwise lack access to credit; they argue the importance of allowing "rate exportation" across state borders; they emphasize the importance of a stable secondary market and settled legal expectations for selling and assigning loans; and, they advance arguments as to why the enforcement of state usury laws against loans originated by out-of-state banks but later sold or assigned would be contrary to Congressional intent and harmful in view of various policy arguments.[10]

Avant and its *amici* argue that the valid-when-made rule "was firmly entrenched" when Congress enacted the NBA and Section 27 and that the Court should "take it as a given that Congress . . . legislated with an expectation that the principle will apply." (*See* ECF No. 49 at 5; ECF No. 69 at 6 (both quoting *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991)).)

However, the Court agrees with the Recommendation that these arguments have little, if any, bearing on the issue of complete preemption. (*See* ECF No. 62 at 20.) Even assuming the valid-when-made rule does provide Avant with a complete defense against the Administrator's claims, and even if *amici* are correct that Congress meant to allow practices such as Avant's, and also that such arrangements provide public benefits which should be preserved, absolutely nothing prevents Avant (or any other similarly-situated assignee of bank-originated debt) from asserting those arguments and maintaining that preemption defense in the *state* courts. None of these

---

[10] *See generally, e.g.*, Br. of *Amici Curiae* The Clearing House Association L.L.C., Am. Bankers Assoc. and Loan Syndic. and Trading Assoc. (ECF No. 49), Br. of *Amicus Curiae The Marketplace Lending Assoc.* (ECF No. 44-1); Br. of *Amicus Curiae* The Marketplace Lending Association, ECF No. 575, *Meade v. Marlette Funding LLC*, Case No. 1:17-cv-0575-PAB (D. Colo. May 3, 2017), Br. of *Amici Curiae* the Independent Cmty. Bankers of Am. and the NJ Bankers Assoc., ECF No. 36, *Cross River Bank v. Meade*, Case No. 1:17-cv-0832-PAB-KMT (D. Colo. June 7, 2017).

arguments provide grounds for removal, in derogation of the well pleaded complaint rule. Recognition of the valid-when-made rule thus offers no reason to infer that Congress impliedly provided for an exclusive federal *forum*, which no express statutory language provides.

Lastly, the arguments raised by *amici* in very large part urge the Court not to follow the Second Circuit's decision in *Madden v. Midland Funding, LLC*, 786 F.3d 246 (2d Cir. 2015), *cert. denied*, 136 S.Ct. 2505 (2016). But *Madden*, which arose on dissimilar facts, did not raise complete preemption. In *Madden*, a national bank sold written-off credit card debt to a third party, which then sought to collect, claiming a 27% interest rate. *Id.* at 248. The plaintiff sued the collector under the Fair Debt Collection Practices Act and state usury law. *Id.* Addressing express preemption—not complete preemption—the Second Circuit reasoned that defendants had not "acted on behalf of a national bank," but "solely on their own behalves," *id.* at 251, distinguished *Krispin*, *id.* at 252–53, and held that "extension of NBA preemption to third-party debt collectors * * * would create an end-run around usury laws for non-national bank entities that are not acting on behalf of a national bank," *id.* at 251–52, therefore rejecting the defendants' argument that the plaintiff's claims were preempted. Neither the facts nor the holding of *Madden* are implicated here.

*Amici* clearly wish to avoid having *Madden* extended to other circuits (and likely seek a vehicle by which to have it overturned in the Supreme Court).[11] But *Madden* did

---

[11] The Protecting Consumers' Access to Credit Act of 2017, H.R. 3299, 115th Cong., (2d Sess.) expressly seeks to nullify *Madden* by amending various statutory provisions, including Section 27, to codify the valid-when-made rule by making explicit in the statute that a "loan that is valid when made . . . shall remain valid . . . regardless of whether the loan is subsequently

not raise complete preemption, and the Administrator cites it only in passing, to reflect the isolated nature of the facts and analysis in *Krispin*. (*See* ECF No. 28 at 10 n.4.) Thus, there is no need here to either follow or reject *Madden*, nor to take up the views of the Office of the Comptroller of the Currency and the Federal Deposit Insurance Corporation, cited by Avant and *amici*, as to the alleged errors and consequences of *Madden*. Having concluded that Section 27 does not completely preempt claims brought against a non-bank defendant in Avant's position, the Court declines the invitation of *amici to* address any broader preemption issues raised by *Madden* and the other authorities cited. *See Schmeling*, 97 F.3d at 1343 (in analyzing complete preemption, the court should avoid analysis unnecessarily bearing on the merits of the case).

## V. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.      The Recommendation of U.S. Magistrate Judge Scott T. Varholak (ECF No. 62) is ADOPTED IN ITS ENTIRETY;

2.      Defendants' Objection to the Recommendation (ECF No. 69) is OVERRULED;

3.      Plaintiff's Motion to Remand for Lack of Subject Matter Jurisdiction (ECF No. 28) is GRANTED;

4.      Defendants' request for Oral Argument (ECF No. 66) and request for the Court to request briefing from the Office of the Comptroller of the Currency and/or the

---

sold, assigned, or otherwise transferred to a third party, and may be enforced by such third party notwithstanding any State law to the contrary." This bill was passed by the House of Representatives on February 14, 2018, but has not been acted upon by the Senate as of the date of this Order.

Federal Deposit Insurance Corporation (ECF No. 69 at 10) are both DENIED. Given the extensive briefing and argument already submitted and available to the Court, and given the nearly uniform authority supporting the Recommendation's conclusions regarding complete preemption, the Court agrees with the Administrator that further argument or briefing would lead only to additional delay in resolving the Administrator's already long-pending Motion (*see* ECF No. 74); and,

5. The Clerk shall REMAND this case to the District Court for the City and County of Denver, and shall terminate this action. The parties shall bear their own fees and costs.

Dated this 1st day of March, 2018.

BY THE COURT:

William J. Martínez
United States District Judge